AO 91 (Rev. 02/09) Criminal Complaint

# United States District Court



### for the
### Western District of New York

| | |
|---|---|
| **United States of America**<br>**v.**<br>**BERNARD PERKINS, CRYSTAL KING, CRYMSON ALDRICH,**<br>**JONATHAN M. THOMPSON, JOSEPH N. THOMPSON,**<br>**LAWRENCE MITCHELL, ANTHONY LAUGHING, JR. AND**<br>**CURTIS THOMPSON** | Case No.  19-MJ- *4109* |

*Defendants*

## CRIMINAL COMPLAINT

I, ERIN BRIGANTI, the complainant in this case, state that the following is true to the best of my knowledge and belief.

Between June 2016 and the present, in the County of Monroe, in the Western District of New York, the defendants violated offenses described as follows:

did knowingly and unlawfully commit wire fraud and conspiracy to commit wire fraud, in violation of Title 18, United States Code, Sections 1343 and 1349; did knowingly and unlawfully commit money laundering and conspiracy to commit money laundering, in violation of Title 18, United States Code, Sections 1956(h), 1957(a) and 2.

This Criminal Complaint is based on these facts:

SEE ATTACHED AFFIDAVIT OF SPECIAL AGENT ERIN BRIGANTI.

☒  Continued on the attached sheet.

_____
*Complainant's signature*

ERIN BRIGANTI, S/A IRS
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  ~~July~~ august 1 , 2019

_____
*Judge's signature*

HONORABLE MARIAN W. PAYSON
UNITED STATES MAGISTRATE JUDGE
*Printed name and title*

City and State:  Rochester, New York

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

State of New York  )
County of Monroe   )   ss:
City of Rochester    )

*19-mj-4109*

I, ERIN BRIGANTI, being duly sworn, depose and say:

## INTRODUCTION

1.     I am a Special Agent with Internal Revenue Service, Criminal Investigation (hereinafter IRS-CI), having been duly appointed on June 30, 2002 and, as such, am a Federal Law Enforcement Officer within the meaning of Rule 41(a) of the Federal Rules of Criminal Procedure. During the course of my employment with IRS-CI, I have conducted and assisted on multiple criminal investigations involving tax fraud, money laundering, mail fraud, wire fraud, narcotics trafficking and the illegal structuring of financial transactions. Many of these investigations focused on individuals deriving income from both legal and illegal sources.   I have participated in the execution of several search and seizure warrants, which covered the searches of different locations including residences, business offices, and vehicles.

2.     This affidavit is made in support of a criminal complaint charging Bernard PERKINS, Crystal KING, Crymson ALDRICH, Jonathan THOMPSON, Joseph THOMPSON, Lawrence MITCHELL, Curtis THOMPSON and Anthony LAUGHING JR. with violating Title 18, United States Code, Section 1343 and 1349, (wire fraud and conspiracy to commit wire fraud), Title 18, United States Code, Sections 1956(h), 1957(a) and 2 (money laundering and conspiracy to commit money laundering).

3.     The information and statements in this affidavit are based on my personal knowledge and information obtained from other law enforcement and regulatory agencies assisting with this investigation including but not limited to the Bureau of Alcohol Tobacco and Firearms (ATF), the Customs and Border Protection Agency (CBP), Homeland Security Investigations (HSI), the Alcohol and Tobacco Tax and Trade Bureau (TTB), as well as information obtained from witness interviews, surveillance and from the review of records and documents including but not limited to phone records and bank records.   Where the contents of documents and the actions and statements of others are reported herein, they are reported only in substance and in part, unless otherwise indicated.   I have participated fully in this investigation, and as a result of this participation, as well as information provided by other law enforcement officers, I am fully familiar with the facts set forth herein.

4.     Through my training, education, experience and speaking with other law enforcement officers participating in this investigation, I am familiar with how illegal cigarettes are manufactured and sold as well as how cut rag tobacco is smuggled from the United States into Canada and how those involved in the illegal manufacturing of cigarettes and smuggling of tobacco utilize wire communications to facilitate their illegal activities. My investigative experience detailed herein, and the experience of other law enforcement agents who are participating in this investigation, serve as the basis for the opinions and conclusions set forth herein.   Because this affidavit is being submitted for the limited purpose of securing a criminal complaint, I have not included each and every fact known to me concerning this investigation.   Rather, I have set forth only those facts that I believe are

2

necessary to establish probable cause to believe that Bernard PERKINS, Crystal KING, Crymson ALDRICH, Jonathan THOMPSON, Joseph THOMPSON, Lawrence MITCHELL, Curtis THOMPSON and Anthony LAUGHING JR. did knowingly violate Title 18, United States Code, Sections 1343 and 1349, (wire fraud and conspiracy to commit wire fraud), Title 18, United States Code, Sections 1956(h), 1957(a) and 2, (money laundering and conspiracy to commit money laundering).

## BACKGROUND

5.      Law enforcement began conducting this investigation during the fall of 2016 into the illegal activities of Bernard PERKINS and his business, Bristol International Group LLC[1] (BRISTOL). The evidence gathered to date indicates that Bernard PERKINS is responsible for purchasing large quantities of cut rag tobacco processed in North Carolina and arranging for the sale and distribution of it to various locations on the Akwesasne Mohawk Indian Reservation (AMIR) in New York.   Cut rag tobacco is tobacco that is ready to be used to produce cigarettes with no further processing.   Based on evidence gathered during the course of this investigation, it is believed the cut rag tobacco sold by Bernard PERKINS to customers on the AMIR is ultimately smuggled across the border into Canada to evade the high federal excise duties and provincial taxes or is used by unlicensed cigarette manufacturers located on the AMIR to produce untaxed cigarettes.   Your affiant knows that the Canadian Federal Government and provinces place a tax on cigarettes that are

---

[1] According to records obtained from New York State Department of State, Articles of Organization in the name of Bristol International Group LLC were filed on April 2, 2004 listing BERNARD PERKINS of 90 Auramar Drive Rochester, New York 14609 as the sole managing member and the Registered Agent as Speigal & Utrera, P.A., P.C., 45 John Street, Suite 711, New York, New York 10038.

manufactured and sold in Canada and furthermore that duties are collected on tobacco when it enters Canada.

6.     The St. Lawrence River and the international boundary between the United States and Canada pass through the AMIR.  The U.S. side of the AMIR is located in the New York state counties of St. Lawrence and Franklin, and the Canadian side of the AMIR is located in the Canadian provinces of Quebec and Ontario.  Both the federal and provincial governments of Canada impose excise duties and taxes on cigarettes and tobacco imported and sold in Canada, which duties are due and owing at the time of importation, and which excise taxes are due upon sale.  A New York entity that manufactures cigarettes in the United States is required under federal law to obtain and possess a valid manufacturing permit issued by the U.S. Secretary of Treasury.  There are currently three licensed manufacturers located on the U.S. side of the AMIR that hold valid manufacturing permits issued by the U.S. Secretary of Treasury.  BRISTOL does not hold a valid manufacturing permit issued by the U.S. Secretary of Treasury nor has BRISTOL sold or delivered cut rag tobacco to any of the licensed manufacturing facilities located on the AMIR over the past several years.

7.     There are unlicensed cigarette manufacturers on the AMIR that manufacture large quantities of contraband cigarettes, which are thereafter sold, untaxed, in the United States to evade both state and federal taxes, or are smuggled into Canada, without paying duties owed, and sold, untaxed, in the Canadian "black market."  The cut rag tobacco is also smuggled into Canada to evade paying the high duties and taxes due at the time of importing

4

the tobacco into Canada, including excise duty tax, Goods and Services Tax (GST) and provincial Tobacco Tax Act taxes (Quebec or Ontario).

8.      As a general practice, people involved with smuggling tobacco on the AMIR, order the cut rag tobacco through a broker, in this case Bernard PERKINS.   The customers either called or sent text messages to Bernard PERKINS in Rochester, New York to place an order for cut rag tobacco.   Bernard PERKINS then contacted the owners of CanStar International Inc. (CANSTAR), a broker in Florida, via text messages and phone calls to purchase loads of cut rag tobacco and make arrangements to have the tobacco shipped from the processor in North Carolina to various warehouses located throughout the AMIR, often times in obscure locations in the middle of the night.   One truckload of tobacco typically contains 132 boxes of cut rag tobacco, each weighing approximately 240 lbs., depending on the blend of tobacco purchased.   On average, one full truckload of tobacco contains approximately 31,680 lbs. of tobacco.

9.      Once the tobacco was unloaded in a warehouse on the AMIR, the customers on the AMIR involved with smuggling tobacco into Canada then hired workers to breakdown the boxes of tobacco into thirty pound to fifty pound garbage bags to be smuggled into Canada via boat, snowmobiles, box trucks, cars, etc. to Canadian customers to evade the high Canadian duties and taxes due on importing cut rag tobacco.   The price of the tobacco per pound depends on the blend of the tobacco.   Generally speaking, a common blend of tobacco could be purchased from Bernard PERKINS for approximately $2.97/lb. and then sold in Canada for approximately $8.00/lb. to $13.00/lb.   The customers on the AMIR involved with smuggling tobacco into Canada and the people on the AMIR producing

5

unlicensed cigarettes use the large profits made from their illegal activities to pay Bernard PERKINS in cash payments in excess of $10,000 for the loads of tobacco.

10.     In general, Bernard PERKINS charged approximately $94,000 for a truck load of tobacco depending on the blend of tobacco and the quantity of tobacco being purchased. Surveillance conducted during the course of the investigation has shown Bernard PERKINS traveled to various locations off of the New York State Thruway in Waterloo, New York, Victor, New York and Syracuse, New York, among other places, to meet customers from the AMIR to collect cash payment for the loads of tobacco.

11.     In addition, Bernard PERKINS drove to the AMIR on various occasions during the course of the investigation and stayed overnight at the Destiny's Inn, which is owned by Lawrence MITCHELL, a known co-conspirator in this case, who purchased loads of cut rag tobacco from Bernard PERKINS.   Surveillance has shown Bernard PERKINS meeting with various customers while traveling to the AMIR during the course of the investigation and also traveling to some of the warehouses that loads of tobacco have been delivered to, none of which are a licensed cigarette manufacturing facility.

12.     Surveillance and bank records have also shown that a short time after meeting with customers to collect cash payments, Bernard PERKINS traveled to ESL Federal Credit Union (ESL) in Rochester, New York to deposit the large cash payments received from customers on the AMIR to the BRISTOL business account and send large wire transfers to CANSTAR, the broker in Miami, Florida that Bernard PERKINS purchased the tobacco through, which will be discussed in further detail below.

6

## OVERVIEW OF THE SCHEME & CONSPIRACY

13.     During the course of the investigation, numerous business bank accounts held in the name of BRISTOL have been identified at various financial institutions, which were opened by Bernard PERKINS in the Western District of New York, utilizing the address 90 Auramar Drive Rochester, New York.   Various bank records have been subpoenaed and analyzed during the course of this investigation.   During the time-period August of 2015 through July of 2019, BRISTOL maintained bank accounts at the following financial institutions, including but not limited to:   Citizens Bank, M & T Bank, KeyBank, and ESL.

14.     The analysis of the BRISTOL bank accounts all show the same general pattern of large cash deposits made to the business bank accounts to immediately fund an outgoing wire transfer to CANSTAR for the purchase of cut rag tobacco.   It should also be noted that on two different occasions, Bernard PERKINS deposited large amounts of Canadian Currency to his BRISTOL bank account held at M & T Bank.   Specifically, on June 27, 2016, BERNARD PERKINS deposited $78,000 in Canadian Currency and on June 28, 2016, BERNARD PERKINS deposited $44,000 in Canadian Currency in a single transaction.

15.     The analysis of the bank records show that BRISTOL has wired over $13 million to CANSTAR during the time-period August of 2015 through July of 2019 for cut rag tobacco purchases.   The following chart summarizes the total cash deposits and wire transfers to CANSTAR made from the BRISTOL bank accounts held at Citizens Bank, M & T Bank, KeyBank, and ESL during the time period of August 28, 2015 through July 24, 2019.

| Bristol Bank Account: | Citizens Bank #4886 | M & T Bank #2384 | KeyBank #1045 | ESL #3475 | |
|---|---|---|---|---|---|
| Time Period: | August 28, 2015 - August 26, 2016 | June 27, 2016 - December 7, 2016 | December 1, 2016 - May 17, 2017 | May 11 2017 - July 24, 2019 | Totals |
| Cash Deposits: | $ 475,116.40 | $ 2,134,248.20 | $ 2,102,219.97 | $ 8,920,359.50 | $ 13,631,944.07 |
| Wires to CANSTAR: | $ (449,601.00) | $ (2,097,586.53) | $ (2,089,297.80) | $ (8,496,236.40) | $ (13,132,721.73) |

16.　　CANSTAR is operated out of Miami, Florida by Mark Embury and Paul Embury.　CANSTAR lists a corporate address of 4701 Cox Road, Suite #285, Glen Allen, Virginia 23060 and a Postal Address of 12101 SW 69 Court, Pinecrest, Florida 33156 on its invoices.　The address listed on the bank account statements for CANSTAR is 12101 SW 69th Court, Miami, Florida 33156.　CANSTAR acts as a broker and purchases the cut rag tobacco directly from the processor, Tobacco Rag Processors (TRP), located in North Carolina and sells it to BRISTOL.　After BRISTOL purchases the tobacco from CANSTAR, Bernard PERKINS makes arrangements to have truck drivers pick up the tobacco in North Carolina at TRP and deliver it to his customers located at various locations on the AMIR, where the tobacco was ultimately used by unlicensed cigarette manufacturing facilities on the AMIR to produce untaxed cigarettes and/or was broken down into garbage bags to be smuggled into Canada to evade the duties and taxes imposed by the Canadian governments.

17.　　Phone records obtained during the course of the investigation show that Bernard PERKINS communicates with the owners of CANSTAR in Florida through phone calls and text messages on his cell phone on a regular basis to facilitate the purchasing of cut rag tobacco from CANSTAR.　Email records obtained during the course of the investigation also show that Bernard PERKINS communicates using the email address bristolgrp@aol.com with the owners of CANSTAR through the email addresses mark@canstar.com and paul@canstar.com to facilitate the purchasing of cut rag tobacco from CANSTAR.

8

18.     TRP holds a permit as a Manufacturer of Processed Tobacco with the Alcohol and Tobacco Tax and Trade Bureau (TTB) and is required to file a Report of Removal, Sale, or Transfer of Processed Tobacco (Form 5250.2) with TTB within twenty four hours of transferring processed tobacco to someone who does not hold a TTB permit as a manufacturer of processed tobacco or tobacco products.   The Form 5250.2 lists the date of sale or transfer of tobacco, the weight of processed tobacco transferred the identity of the purchaser, the delivery location, as well as the name and address of the person picking up the processed tobacco for delivery along with their driver's license number and license plate/tag number of the vehicle they are driving.

19.     A review of the Forms 5250.2 filed with the TTB during the time period July of 2016 through June of 2019 showing sales of processed tobacco from TRP to CANSTAR being delivered to BRISTOL was conducted during the course of the investigation.   The destination street address on the majority of the Forms 5250.2 for sales to BRISTOL falsely list 90 Auramar Drive, Rochester, New York 14609, which is Bernard PERKINS' personal residence instead of the actual destination address on the AMIR where the truck loads of tobacco are delivered to.   None of the deliveries of tobacco were made to Bernard PERKINS' residence located at 90 Auramar Drive in Rochester, New York as listed on the majority of the Forms 5250.2.   The customers from the AMIR and Bernard PERKINS did not want the actual delivery addresses located on the AMIR listed on any government forms. Based on law enforcement surveillance and intelligence, it was common practice for the truck drivers to meet the customer on the AMIR at the Bear's Den or Twin Leaf gas station, and the

9

customer would then lead the truck driver to the warehouse they wanted the tobacco delivered to because the warehouses were often times located off of main roads or deep in the woods.

### Analysis of Phone Records

20.    During the course of the investigation, a subpoena was issued to Metro PCS/T-Mobile for Telephone number 585-259-XXXX, which was identified as the cell phone utilized by Bernard PERKINS.   The documents produced by T-Mobile showed the subscriber name and address for phone number 585-259-XXXX, is Bernard PERKINS of 90 Auramar Drive, Rochester, New York 14609 since May 11, 2016.   The call detail records provided by T-Mobile for phone number 585-259-XXXX for the time-period May 11, 2016 through April 11, 2019 were analyzed.   There were also a number of phone calls and text messages to/from customers of Bernard PERKINS who reside on or near the AMIR including Crystal KING, Crymson ALDRICH, Lawrence MITCHELL, and Anthony LAUGHING JR.   From on or about May 11, 2016 through on or about April 11 2019, the defendants communicated through numerous phone calls and text messages to discuss orders of cut rag tobacco purchased from Bernard PERKINS (BRISTOL), which were ultimately purchased from TRP in North Carolina through CANSTAR (Paul and Mark Embury) in Miami, Florida.   The analysis of T-Mobile records show there were over 1700 calls and text messages to/from phone number 305-710-XXXX subscribed to Paul Embury and over 2400 calls and text messages to/from phone number 305-776-XXXX subscribed to Mark Embury, both of whom are the owners/operators of CANSTAR and reside in Florida

21. Based on a witness interviewed[2] during the course of the investigation, Bernard PERKINS communicated with the customers from the AMIR via text messages and phone calls to discuss tobacco orders and payment for tobacco orders as well as to make arrangements for the delivery of the tobacco. Based on information obtained from this same witness, Bernard PERKINS also communicated with Mark Embury and Paul Embury via phone calls and text messages on a regular basis to order loads of cut rag tobacco for customers on the AMIR and make arrangements for truck drivers to pick up the loads of tobacco from TRP in North Carolina to deliver to the AMIR in New York, all in furtherance of the scheme and conspiracy to defraud the Canadian government of taxes and duties that was owed on the loads of cut rag tobacco that were ultimately smuggled into Canada, and also to defraud the United States and New York State of taxes due on the unlicensed cigarettes that were manufactured with the loads of tobacco that were delivered to the unlicensed cigarette manufacturers on the AMIR.

## Tobacco Sales to CRYSTAL KING and CRYMSON ALDRICH

22. Evidence obtained during the course of the investigation shows that BRISTOL has sold over $5.5 million of cut rag tobacco orders to Crystal KING and Crymson ALDRICH, during the time period June of 2016 through June of 2019. Crystal KING and Crymson ALDRICH were business partners in the tobacco sales from June of 2016 until approximately November of 2018 when they had a disagreement and began ordering loads of tobacco separately. A check with TTB shows that Crystal KING and Crymson ALDRICH

---

[2] The witness referenced in this paragraph is a cooperating witness who is providing information to law enforcement in order to obtain a benefit. Your affiant has corroborated the information that has been provided by this witness, through independent means.

do not hold a valid manufacturing permit issued by the U.S. Secretary of Treasury nor have they ever applied for one. During surveillance operations, law enforcement officials have observed Bernard PERKINS meet with Crystal KING and Crymson ALDRICH at various locations in Watertown, Parish, Syracuse, Victor and Waterloo, New York to exchange bags of cash for payment for their tobacco purchases. On some occasions, Crystal KING and Crymson ALDRICH traveled together to bring the cash payment to Bernard PERKINS and on other occasions, either Crystal KING or Crymson ALDRICH would bring the cash payment to Bernard PERKINS alone.

23.     On average, one truckload of tobacco costs approximately $94,000 depending on the blend of tobacco ordered. Often times after meeting with Crystal KING and/or Crymson ALDRICH, Bernard PERKINS made a large cash deposit to his business bank account followed by a large wire transfer out to CANSTAR for the purchase of tobacco. It should also be noted that according to bank records, Crymson ALDRICH also made a cash deposit of $43,400 directly to the business account of BRISTOL held at M & T Bank on October 5, 2016 at the branch located in Watertown, NY. This deposit funded a wire transfer to CANSTAR totaling $40,300 on October 6, 2016.

24.     Intelligence gathered during the course of the investigation, including surveillance of the deliveries of truckloads of tobacco made to Crystal KING and Crymson ALDRICH on the AMIR show that the majority of the loads of tobacco were delivered to an unlicensed cigarette manufacturing factory located on Clete Laughing Road operated by Joseph THOMPSON, Jonathan THOMPSON and Richard Tarbell and to a warehouse located on Ransom Road known as the "green roof" warehouse, which is operated by Curtis

THOMPSON, where tobacco is broken down into garbage bags to be smuggled into Canada to evade the high duties and taxes.   The majority of the deliveries to the Crystal KING and Crymson ALDRICH occurred during the middle of the night.

### Tobacco Deliveries to JOSEPH THOMPSON and JONATHAN THOMPSON

25.      According to records obtained from the Saint Regis Mohawk Tribal Compliance Department, Jonathan THOMPSON as the Owner of Oien:kwa Onerathe holds a Tobacco Manufacturing License[3] listing an address of 87 Clete Laffin Road in Akwesasne, NY issued by the St. Regis Mohawk Tribe.   Your affiant has been advised by a law enforcement officer with personal knowledge, that Richard Tarbell aka Rick Tarbell, who passed away in December of 2018, was a partner with Joseph THOMPSON and Jonathan THOMPSON in the cigarette manufacturing factory located on Clete Laughing Road. Joseph THOMPSON and Jonathan THOMPSON are brothers.    Law enforcement officers have observed vehicles registered to Richard Tarbell, Jonathan THOMPSON and Joseph THOMPSON at the Clete Laughing Road factory during the course of the investigation.   A check with TTB shows that Richard Tarbell, Jonathan THOMPSON, and Joseph THOMPSON do not hold a valid manufacturing permit issued by the U.S. Secretary of Treasury nor have they ever applied for one.

---

[3] Licenses issued by the St. Regis Mohawk Tribe do NOT meet federal requirements to manufacture cigarettes.   For a manufacturer located on an Indian Reservation to legally manufacture cigarettes, the manufacturer must first obtain a license from the United States Secretary of Treasury.

13

26.     Interviews of witnesses[4] who have been inside of the factory located on Clete Laughing Road run by Joseph THOMPSON and Jonathan THOMPSON have stated they have observed cigarette manufacturing machines inside of the factory along with filter trays and pallets of cigarettes.   A law enforcement officer, who works in the area of the AMIR, has also advised your affiant that some of the tobacco delivered to the factory located on Clete Laughing Road is also broken down into garbage bags to be smuggled into Canada in addition to producing untaxed cigarettes.   The Clete Laughing Road factory is located in very close proximity to the St. Lawrence River as Clete Laughing Road leads directly to the St. Lawrence River.

27.     Contraband cigarettes are unstamped and untaxed cigarettes also known to law enforcement as "rollies."   Per Title 18, United States Code, Section 2341, the term contraband cigarettes means a quantity in excess of 10,000 cigarettes which bear no evidence of the payment of applicable state or local cigarette taxes. Contraband cigarettes are manufactured and placed within plastic bags; typically 200 cigarettes are in each bag, similar to the amount of cigarettes which are found in traditional cartons.   There are commonly 50 bags in each cardboard case.   The cases are usually marked indicating the flavor type of the cigarette such as FF (abbreviated for Full Flavor) or M (abbreviated for Menthol).

28.     Information provided to law enforcement officials during the course of the investigation reported that Ronald Sunday aka "Minnows" was delivering the rollies

---

[4] The witnesses referenced in this paragraph are cooperating witnesses who are providing information to law enforcement in order to obtain a benefit. Your affiant has corroborated the information that has been provided by these witnesses, through independent means.

manufactured in the factory on Clete Laughing Road by Jonathan THOMPSON, Joseph THOMPSON and Richard Tarbell to Indian Reservations located in other areas including Buffalo, Plattsburgh, and Long Island on a weekly basis.   On October 18, 2018, HSI Special Agents stopped a 2017 Ford F-350 dually truck, bearing New York license plate #77717MC, towing an enclosed gray trailer, bearing New York license plate #BE44895.   The 2017 F-350 truck was registered to Norma Tarbell-Sunday and the trailer was registered to Ronald Sunday.

29.   At approximately 1:58 pm, the truck and trailer were observed pulling into a driveway directly behind the Bear's Den, where a warehouse owned by Richard Tarbell is located.   A cooperating witness, who has had personal dealings with Richard Tarbell and JONATHAN THOMPSON advised your affiant, that as a routine practice, some of the rollies produced in the Clete Laughing Road warehouse were moved to Richard Tarbell's warehouse located behind the Bear's Den before being distributed.

30.   At approximately 3:00 pm, law enforcement officials observed the 2017 F-350 truck towing the enclosed trailer drive into the rear parking lot of the Bear's Den, where it was fueled.   During the course of surveillance, HSI Agents were able to identify the driver of the vehicle as Ronald Sunday.   At approximately 4:05 pm after following the vehicle, law enforcement officials stopped the truck and trailer on State Route 11B in Bangor, New York. Agents ultimately searched the vehicle and the trailer and found 300 cases of contraband cigarettes that were contained in plastic bag packaging.   Plastic bags are not considered approved cigarette packaging by the Food and Drug Administration (FDA).   The plastic

15

bags lacked a brand name as well as the manufacturers federally issued license number and the New York State tax stamp showing that the state excise tax had been paid.

31.    The 300 cases consisted of the following flavors: MB (menthol blend), LTB (light or smooth blend), and FFB (full flavor blend).   Each case consisted of at least 50 plastic cartons, and each carton had approximately 200 cigarettes, totaling approximately 3,000,000 contraband cigarettes.   The 300 cases contained approximately 15,000 cartons.   The Federal Excise Tax (FET) imposed on a carton of cigarettes is $10.066.   The FET tax loss from the 300 cases was approximately $150,990.   Additionally, New York State taxes cigarettes at a rate of $42.50 per carton making the state of New York's tax loss $637,500, totaling a combined tax loss of $788,490.   The 300 cases of contraband cigarettes were seized along with the truck and the trailer by law enforcement officials.

### Tobacco Deliveries to CURTIS THOMPSON

32.    Cooperating witnesses with personal knowledge have advised law enforcement that Curtis THOMPSON, cousin of Crystal KING, operates the green roof warehouse located on Ransom Road on the AMIR.   Your affiant knows that the green roof warehouse is located in very close proximity to the St. Lawrence River as Ransom Road leads directly to the St. Lawrence River.   Law enforcement officers with personal knowledge of Curtis THOMPSON know that Curtis THOMPSON has family located in Canada, who he sells the majority of the loads of tobacco to that he receives.   Cooperating witnesses advised your affiant that, after the truckloads of tobacco are delivered to the green roof warehouse that Curtis THOMPSON purchases from Crystal KING and Crymson ALDRICH, among other people, Curtis THOMPSON has the boxes of tobacco broken down inside the green roof

16

warehouse into garbage bags to be smuggled into Canada to evade the Canadian federal excise duties and provincial taxes.   Your affiant has verified this information through other sources.

33.     Curtis THOMPSON also allows other people on the AMIR involved in the tobacco smuggling business to utilize his warehouse to have loads of tobacco delivered to the green roof warehouse and stored for a fee of approximately $2,000 per load.   Some of the people who pay Curtis THOMPSON for use of the green roof warehouse also breakdown the boxes of tobacco into garbage bags inside of the warehouse to prepare it to be smuggled into Canada while others just store the tobacco there until it can be moved to another warehouse on the AMIR to be bagged and prepared for smuggling into Canada.

34.     Cooperating witnesses, who are known to your affiant and whose information has been corroborated by your affiant, advised that they have been inside of the green roof warehouse and have observed an industrial size scale, garbage cans and garbage bags, as well as tobacco already bagged into forty to fifty pound garbage bags and stacked along the wall. The cooperating witnesses also advised your affiant that they have observed a twin engine boat and two to three snowmobiles inside of the green roof warehouse, which are also utilized to smuggle the tobacco across the St. Lawrence River.   During the course of the investigation, surveillance showed a number of loads of tobacco that were purchased by Crystal KING and Crymson ALDRICH from Bernard PERKINS delivered to the green roof warehouse being operated by Curtis THOMPSON, often times in the middle of the night.   A check with TTB shows that Curtis THOMPSON does not hold a valid manufacturing permit issued by the U.S. Secretary of Treasury nor has he ever applied for one.

17

## Tobacco Sales to LAWRENCE MITCHELL

35.     Evidence obtained during the course of the investigation shows that BRISTOL has sold over $1 million of cut rag tobacco orders to Lawrence MITCHELL during the time period October of 2016 through July of 2018.   Lawrence MITCHELL purchased tobacco directly from Bernard PERKINS and also placed tobacco orders through another customer of Bernard PERKINS who is now deceased, Arthur Montour. Intelligence gathered during the course of the investigation including physical surveillance by law enforcement show that the loads of tobacco purchased by Lawrence MITCHELL were delivered to various warehouses located on the AMIR run by Lawrence MITCHELL, where the majority of the boxes of tobacco were broken down into garbage bags to be smuggled into Canada via boats, snowmobiles, vehicles, trailers, etc. to evade the Canadian federal excise duties and provincial taxes.

36.     One warehouse where loads of tobacco were delivered to for Lawrence MITCHELL is located on St. Regis Road where the St. Regis River runs directly into the back of the warehouse allowing boats to pull directly into the warehouse and load bags of tobacco to take to Canada.   Cooperating witnesses known to your affiant, who have been inside of this warehouse located on St. Regis Road, advised your affiant that they have observed garbage bags and garbage cans used to breakdown the boxes of tobacco to smuggle to Canadian customers as well as bags of tobacco weighing approximately forty to fifty pounds ready to be smuggled into Canada. This information has been corroborated through other means.

37.     Lawrence MITCHELL also had loads of tobacco delivered to other warehouses located throughout the AMIR including but not limited to a warehouse located on Route 37 near the Speedway Plaza and a warehouse located behind the Destiny Inn on Route 37.   According to the same cooperating witnesses, Lawrence MITCHELL has cigarette machines in the warehouse located behind the Destiny Inn on the AMIR where he also uses some of the tobacco he purchases from Bernard PERKINS to manufacture contraband cigarettes in addition to bagging the tobacco to smuggle into Canada.

38.     According to records obtained from the Saint Regis Mohawk Tribal Compliance Department, a Tobacco Manufacturing License issued by the St. Regis Mohawk Tribe is held by the Akwesasne Tobacco Company located at 459 B State Route 37 Akwesasne, NY 13655.     The tribal license does not meet federal requirements to manufacture cigarettes; there is no exception for Indian Reservations.   The Destiny Inn is located at 459 State Route 37 Akwesasne, NY.    A check with TTB shows that Lawrence MITCHELL does not hold a valid manufacturing permit issued by the U.S. Secretary of Treasury nor has he ever applied for one.

## Tobacco Sales to ANTHONY LAUGHING JR.

39.   Evidence obtained during the course of the investigation shows that BRISTOL has sold approximately $190,000 of cut rag tobacco orders directly to Anthony LAUGHING JR. during the time period February of 2018 through July of 2018.   It should be noted that BRISTOL also sold over $1 million of cut rag tobacco orders to Anthony Laughing Sr. (father of Anthony LAUGHING JR.) before he passed away in October of 2016.   Intelligence

gathered during the course of the investigation, including physical surveillance by law enforcement show that the loads of tobacco purchased directly by Anthony LAUGHING JR. in 2018 were delivered to the old casino building located on the AMIR, which is also where the majority of the loads of tobacco sold to Anthony Laughing Sr. were delivered to.

40.     Cooperating witnesses advised your affiant they have been inside of the old casino building on the AMIR and have observed garbage bags and garbage cans with holes in the sides of them used to rebag the tobacco to prepare it for smuggling into Canada.   Based on your affiant's discussions with law enforcement officers who have knowledge and experience working tobacco smuggling cases, they have advised me that it is common practice for people to use garbage cans with holes in the sides of them to break down the boxes of tobacco into thirty to fifty pound garbage bags to prepare it for smuggling into Canada.  A witness interviewed during the course of the investigation who has had personal dealings with Anthony LAUGHING JR., advised your affiant that Anthony LAUGHING JR. is involved with breaking down boxes of tobacco into bags to be smuggled into Canada.  A check with TTB shows that ANTHONY LAUGHING JR. does not hold a valid manufacturing permit issued by the U.S. Secretary of Treasury nor has he ever applied for one.

## **Summary of Specific Sales**

41.     Below are detailed summaries of specific orders of cut rag tobacco sold to Crystal KING, Crymson ALDRICH, Lawrence MITCHELL and Anthony LAUGHING JR. from Bernard PERKINS, which were purchased from TRP in North Carolina through CANSTAR in Florida.

20

**132 Boxes DF60 Sold to LAWRENCE MITCHELL**

42.     An invoice from CANSTAR was issued to BRISTOL on or about November 13, 2017 for 132 boxes of cut rag tobacco (DF-60) weighing 31,680 lbs. for a total price of $90,288.   The invoice requested payment by wire transfer to CANSTAR'S account at Bank of America.   The Form 5250.2 filed with TTB by TRP shows that 132 boxes of cut filler tobacco, each weighing 240 lbs., for a total weight of 31,680 was sold to CANSTAR with a destination address of 90 Auramar Drive Rochester, New York on November 13, 2017.

43.     The load of tobacco picked up at TRP on November 13, 2017 was delivered to a warehouse utilized by Lawrence MITCHELL located on State Route 37 passed the Speedway Plaza on the AMIR on or about November 14, 2017.   This is one of the warehouses identified during the investigation, where Lawrence MITCHELL has tobacco delivered to and then broken down into bags to be smuggled into Canada.   ESL Bank records show that on November 13, 2017, Bernard PERKINS deposited $85,852.00 in cash and wired $85,852.80 to CANSTAR for 132 Boxes of DF-60.   This wire transfer to CANSTAR on November 13, 2017 paid for the load of 132 boxes of DF-60 that was picked up from TRP on November 13, 2017 and delivered to the warehouse utilized by Lawrence MITCHELL located on State Route 37 near the Speedway Plaza.

44.     The analysis of phone records obtained from T-Mobile for phone number 585-259-XXXX subscribed to Bernard PERKINS shows that during the time period November 11, 2017 through November 13, 2017, there were a number of phone calls and text messages between Bernard PERKINS and phone numbers utilized by Lawrence

21

MITCHELL, Mark Embury and Paul Embury during which they presumably discussed placing the order and payment of the 132 boxes of DF-60 cut rag tobacco delivered on or about November 14, 2017 to the warehouse located on Route 37 on the AMIR utilized by Lawrence MITCHELL. In addition, on or about November 18, 2017, Mark Embury emailed a copy of CANSTAR Invoice #2017-065 to Bernard PERKINS for this order.

## 132 Boxes DF60 Sold to ANTHONY LAUGHING JR.

45.     Invoice #2018-008 from CANSTAR was issued to BRISTOL on or about February 22, 2018 for 132 boxes of cut rag tobacco (DF60) weighing 31,680 lbs. for a total price of $90,288. The invoice requests payment by wire transfer to CANSTAR'S account at Bank of America. The Form 5250.2 filed with TTB by TRP shows that 132 boxes of cut filler tobacco, each weighing 240 lbs., for a total weight of 31,680 was sold to CANSTAR with a destination address of 90 Auramar Drive Rochester, NY on February 26, 2018.

46.     Surveillance showed the load of tobacco picked up at TRP on February 26, 2018 was delivered to Anthony LAUGHING JR. at the old casino building on the AMIR at approximately 11:30 pm on February 26, 2018.

47.     On or about February 21, 2018, Bernard PERKINS made a cash deposit to the BRISTOL bank account at ESL in the amount of $65,530. On or about February 26, 2018, Bernard PERKINS made a cash deposit of $108,194 to the BRISTOL bank account at ESL and then made two separate wire transfers to CANSTAR for two loads of cut rag tobacco, which were funded by the two cash deposits made on February 21, 2018 and February 26,

2018. ESL Bank records show that Bernard PERKINS made two separate wire transfers to CANSTAR, each in the amount of $85,852.80 for 132 boxes DF60, on or about February 26, 2018. According to evidence gathered during the investigation, one of the wire transfers made on February 26, 2018 to CANSTAR paid for the load of 132 boxes of DF60 that was picked up from TRP on February 26, 2018 and delivered to Anthony LAUGHING JR. at the old casino building on the AMIR.

48.     The analysis of phone records obtained from T-Mobile for phone number 585-259-5511 subscribed to Bernard PERKINS shows that during the time period February 20, 2018 through February 26, 2018, there was a number of phone calls and text messages between BERNARD PERKINS and phone numbers utilized by Anthony LAUGHING JR, Mark Embury and Paul Embury during which they presumably discussed placing the order and payment of the 132 boxes of DF60 cut rag tobacco delivered on February 26, 2018 to the old casino building. In addition, Mark Embury emailed a copy of CANSTAR Invoice #2018-008 to Bernard PERKINS on or about March 23, 2018 for this order.

### 132 Boxes of AB11 Sold to CRYSTAL KING and CRYMSON ALDRICH

49.     Invoice #2018-010 from CANSTAR was issued to BRISTOL on or about March 5, 2018 for 132 boxes of cut rag tobacco (AB11) weighing 29,040 lbs. for a total price of $78,988.80. The invoice requests payment by wire transfer to CANSTAR'S account at Bank of America. The Form 5250.2 filed with TTB by TRP shows that 132 boxes of cut filler tobacco, each weighing 220 lbs., for a total weight of 29,040 was sold to CANSTAR with a destination address of 90 Auramar Drive Rochester, NY on March 7, 2018.

50.     The load of tobacco picked up at TRP on March 7, 2018 was delivered to the Clete Laughing Road Factory run by Jonathan THOMPSON, Joseph THOMPSON and Richard Tarbell, at approximately 8:30 pm on March 8, 2018.   Surveillance showed Crystal KING driving a Chevrolet Traverse bearing New York Plate #HNX 8498 meet the truck driver with the load of tobacco at the Twin Leaf gas station and lead him back to the factory located on Clete Laughing Road.   A Chevrolet Malibu bearing New York Plate #GYD 2031 registered to Crymson ALDRICH was also parked in the parking lot of the Clete Laughing Road factory at the time the tobacco was delivered to the factory.


51.     At approximately 11:15 am on March 9, 2018, Bernard PERKINS traveled to the area of Destiny USA Mall, a known location where he would meet customers from the AMIR to collect cash payments for loads of cut rag tobacco.   After approximately five minutes, Bernard PERKINS drove back to his residence in Rochester, NY arriving at approximately 12:40 pm.   At approximately 2:05 pm on March 9, 2018, Bernard PERKINS traveled to ESL to make a cash deposit to the BRISTOL bank account and wire money to CANSTAR for a load of cut rag tobacco.   ESL Bank records show that Bernard PERKINS deposited $77,682 in cash and wired $77,682 to CANSTAR for 132 Boxes of AB11 (blend of tobacco) on March 9, 2018.   This wire transfer to CANSTAR on March 9, 2018 paid for the load of 132 boxes of AB11 that was picked up from TRP on March 7, 2018 and delivered to the Clete Laughing Road factory operated by Jonathan THOMPSON, Joseph THOMPSON, and Richard Tarbell.

24

52.     The analysis of phone records obtained from T-Mobile for phone number 585-259-5511 subscribed to Bernard PERKINS shows that during the time period March 5, 2018 through March 9, 2018 there was a number of phone calls and text messages between Bernard PERKINS and phone numbers utilized by Crymson ALDRICH, Crystal KING, Mark Embury and Paul Embury during which they presumably discussed placing the order and payment of the 132 boxes of AB11 cut rag tobacco delivered on March 8, 2018 to the Clete Laughing Road factory.   In addition, Mark Embury emailed a copy of CANSTAR Invoice #2018-010 to BERNARD PERKINS on or about March 23, 2018 for this order.

### 132 Boxes DF-60 Sold To CRYSTAL KING and CRYMSON ALDRICH

53.     On June 5, 2018, law enforcement officers observed Bernard PERKINS and his son meet with two females occupying a grey Chevrolet Traverse bearing New York State Plate #HNX 8498 registered to Crystal KING in the parking lot across the street from Destiny USA Mall in Syracuse, New York at approximately 11:25 am.   After approximately five minutes, both parties departed the parking lot and Bernard PERKINS and his son drove back to their residence in Rochester, NY.   Law enforcement officers observed Bernard PERKINS' son retrieve a bag out of the trunk before entering the residence with Bernard PERKINS upon their return to Rochester, NY at approximately 1:05 pm.

54.     At approximately 2:25 pm on June 5, 2018, Bernard PERKINS traveled to ESL to make a cash deposit to the BRISTOL bank account and wire money to CANSTAR for a load of cut rag tobacco.   ESL Bank records show that Bernard PERKINS deposited

$85,852.00 in cash and wired $85,852.80 to CANSTAR for 132 boxes of DF60 (blend of tobacco) on June 5, 2018.

55.    This wire transfer to CANSTAR on June 5, 2018 was payment for a load of 132 boxes of DF60 that was picked up from TRP on May 31, 2018 and delivered to the green roof location, run by Curtis THOMPSON, at approximately 10:00 pm on June 1, 2018.    The Form 5250.2 filed with TTB by TRP shows that 132 boxes of cut filler tobacco, each weighing 240 lbs., for a total weight of 31,680 was sold to CANSTAR with a destination address of 90 Auramar Drive Rochester, NY on May 31, 2018.    Invoice #2018-025 from CANSTAR was issued to BRISTOL on or about May 31, 2018 for 132 boxes of cut rag tobacco (DF-60) weighing 31,680 lbs. for a total price of $90,288.    The invoice requests payment by wire transfer to CANSTAR'S account at Bank of America.

56.    The analysis of phone records obtained from T-Mobile for phone number 585-259-5511 subscribed to Bernard PERKINS shows that during the time period May 30, 2018 through June 5, 2018 there was a number of phone calls and text messages between Bernard PERKINS and phone numbers utilized by Crymson ALDRICH, Crystal KING, Mark Embury and Paul Embury during which they presumably discussed placing the order and payment of the 132 boxes of DF60 cut rag tobacco delivered on June 1, 2018 to the green roof warehouse.

## WIRE FRAUD/MONEY LAUNDERING

57.     Based on the information listed in this affidavit, your affiant believes Bernard PERKINS, Crystal KING, Crymson ALDRICH, Jonathan THOMPSON, Joseph THOMPSON, Lawrence MITCHELL, Curtis THOMPSON and Anthony LAUGHING JR., were all knowing participants of the scheme to defraud Canada from collecting taxes and excise duties for the import of cut rag tobacco travelling from the United States into Canada; and/or the United States and New York State from collecting State and Federal taxes for the manufacturing of the unlicensed cigarettes they are producing.

58.     In furtherance of the scheme to defraud, Crystal KING, Crymson ALDRICH, Jonathan THOMPSON, Joseph THOMPSON, Lawrence MITCHELL, Curtis THOMPSON and Anthony LAUGHING JR., all caused wire communications to occur from June 2016 through the present, namely telephone calls from Bernard PERKINS who was located in New York to Mark Embury and Paul Embury, the owners of CANSTAR, who were located in Florida. A cooperating witness with personal knowledge of the telephone calls confirmed the wire communications were made to further the scheme to obtain loads of cut rag tobacco from TRP in North Carolina delivered to the AMIR, which were ultimately smuggled into Canada or used to produce unlicensed cigarettes on the AMIR in furtherance of the scheme to defraud Canada of duties and taxes due on imported tobacco and the United States and New York State of taxes due on the unlicensed cigarettes that were produced on the AMIR.

27

59.   In addition, based on the evidence gathered during the investigation, including information provided by cooperating witnesses, which your affiant has corroborated through other means, Crystal KING, Crymson ALDRICH, Jonathan THOMPSON, Joseph THOMPSON, Lawrence MITCHELL, Curtis THOMPSON and Anthony LAUGHING JR., used proceeds obtained from the wire fraud scheme to defraud Canada, the United States and New York State to purchase loads of cut rag tobacco from Bernard PERKINS from June 2016 through the present and knowingly caused Bernard PERKINS to deposit the proceeds derived from the wire fraud scheme to his business bank accounts, which said deposits were always in excess of $10,000.   Furthermore, Crystal KING, Crymson ALDRICH, Jonathan THOMPSON, Joseph THOMPSON, Lawrence MITCHELL, Curtis THOMPSON and Anthony LAUGHING JR., knowingly caused Bernard PERKINS to utilize the illegal proceeds deposited to his business accounts to send wire transfers in excess of $10,000 to CANSTAR to purchase the loads of tobacco in furtherance of the scheme.

60.   The electronic wire transfers listed below constitute monetary transactions in excess of $10,000 with proceeds of a specified unlawful activity, namely Wire Fraud in violation of Title 18, United States Code, Section 1343; all in violation of Title 18, United States Code, Sections, 1956(h), 1957(a) and 2.

a.     An electronic wire transfer of funds, occurring on or about November 13, 2017 in the amount of $85,852.80, from BRISTOL in Rochester, New York to CANSTAR in Miami, Florida for the load of cut rag tobacco sold to Lawrence MITCHELL.

b.     An electronic wire transfer of funds, occurring on or about February 26, 2018 in the amount of $85,852.80, from BRISTOL in Rochester, New York to

28

CANSTAR in Miami, Florida for the load of cut rag tobacco sold to Anthony LAUGHING JR.

c.     An electronic wire transfer of funds, occurring on or about March 9, 2018 in the amount of $77,682 from BRISTOL in Rochester, New York to CANSTAR in Miami, Florida sold to Crymson ALDRICH and Crystal KING.

d.      An electronic wire transfer of funds, occurring on or about June 5, 2018 in the amount of $85,852.80 from BRISTOL in Rochester, New York to CANSTAR in Miami, Florida for the load of cut rag tobacco sold to Crystal KING and Cymson ALDRICH.

## CONCLUSION

Based on the foregoing, I respectfully submit that there is probable cause to believe that Bernard PERKINS, Crystal KING, Crymson ALDRICH, Jonathan THOMPSON, Joseph THOMPSON, Lawrence MITCHELL, Curtis THOMPSON and Anthony LAUGHING JR. did knowingly commit wire fraud, conspiracy to commit wire fraud, money laundering, and conspiracy to commit money laundering.

_____
Erin C. Briganti, Special Agent
Internal Revenue Service, Criminal Investigation

Sworn to before me this
1st day of ~~July~~ 2019.
august

_____
HON. MARIAN W. PAYSON
United States Magistrate Judge

29