UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                Plaintiff,

      v.

CRYMSON ALDRICH,

                Defendant.
_____

REPORT & RECOMMENDATION

19-MJ-4109

        On February 28, 2020, counsel for the defendant filed a motion pursuant to 18 U.S.C. § 4241(a) for a hearing to determine the mental competency of the defendant. (Docket # 126). The government took no position on the motion. (*See* Docket # 133). Finding reasonable cause to believe that the defendant at that time might be suffering from a mental disease or defect rendering her unable to understand the nature and consequences of the proceedings against her and to assist properly in her defense, the Court scheduled a competency hearing for May 13, 2020, which was thereafter adjourned. (Docket ## 139, 154, 171). The Court further ordered, pursuant to 18 U.S.C. § 4241(b), that the defendant undergo a psychiatric or psychological examination, with the results of such examination to be reported to the Court and counsel. (Docket # 139).

        Prior to the competency hearing, the Court received a report dated July 16, 2020, prepared by examining forensic psychiatrist R.P. Singh, M.D., reflecting the results of defendant's psychiatric examination. (Docket # 200). Dr. Singh opined that the defendant was not currently competent to stand trial, noting that she was exhibiting "severe symptoms of a

mental disorder," principally, delusional beliefs. (*Id.* at 5). He diagnosed the defendant with "unspecified bipolar and related disorder, most likely related to thyroid medicine." (*Id.*). Significantly, Dr. Singh stated that he "strongly suspect[ed]" that the defendant's symptoms might have been "precipitated by the thyroid medicine" she was taking for thyroid disease with which she had been diagnosed approximately a year earlier. (*Id.*). In relevant part, Dr. Singh reported:

> It is a well-documented fact that thyroid illnesses can cause psychiatric symptoms. She was started on a thyroid medicine a year ago and her dose was increased six months ago. One of the potential side effects of thyroid medicine is symptoms of mental condition, specially mania. Ms. Aldrich does not have history of having suffered from mental illness in the past. There is a strong correlation between her being started on thyroid medicine and her experiencing symptoms of mental illness. I strongly suspect that her current symptoms of mental illness may have been precipitated by the thyroid medicine she is taking.
>
> Ms. Aldrich requires and will benefit from a coordinated treatment effort between her primary care physician, who is managing her thyroid condition and prescribing thyroid medicine, and a mental health expert, preferably a psychiatrist. She will require adjustment in the dosage of the medicine, which I believe is causing her mental symptoms. Adjustments in the thyroid medicine dose will most likely help her recover from the symptoms of her current mental illness. It is also likely that she may require treatment with a psychiatric medicine in the short period while her thyroid medicine dose is being adjusted.

(*Id.* at 5-6).

Following receipt and review of Dr. Singh's report, new counsel, Jon Getz, Esq., was appointed to represent the defendant. (*See* Docket # 202). At the next conference following his appointment, Mr. Getz requested an adjournment to allow the defendant to explore whether her symptoms were related to her thyroid medication and to consider examination by a defense

forensic psychologist.  (*Id.*).  The Court subsequently received a report from Gayle Morse, PhD, dated September 28, 2020.  (Docket # 213).  Dr. Morse opined that the defendant was currently competent and able to participate in her own defense.  (*Id.* at 3).  She noted that the defendant was diagnosed with hypothyroidism in mid-May 2018 (*id.* at 1), is being treated for that condition (*id.* at 2), and reported that she is no longer taking any medication and "feels much better" (*id.*).  Dr. Morse reported that the defendant generally scored within normal range on various assessments administered by Dr. Morse.  (*Id.*).  Based upon her examination, Dr. Morse noted "no evidence of a thought disorder, delusions or hallucinations at this time" and observed that the defendant was "cooperative and engaged in the [assessment] work that we did." (*Id.* at 3).

At a status conference following receipt of Dr. Morse's report, the government stated that it was not contesting the defendant's current competence to proceed nor requesting a hearing.  (*See* Docket # 214).  Defense counsel likewise stated that the defendant was not requesting a hearing and urged the Court to find the defendant competent to proceed.  (*Id.*).  Counsel for the defendant represented that he has met with the defendant in person and telephonically on numerous occasions and believes she is competent to proceed.  (*Id.*).  Mr. Getz reaffirmed that belief at a subsequent status conference on October 30, 2020.  (*See* Docket # 215).

I agree with both parties that the Court need not conduct a hearing to determine the pending motion.  Although the Court received and reviewed reports from two experts reaching differing opinions regarding the defendant's competency at the time of their respective evaluations, the information contained in the reports provides a reasonable basis upon which to

3

explain and reconcile the apparent discrepant opinions and to conclude that the defendant is now competent to proceed. As Dr. Singh noted, the defendant has no prior reported history of mental health illness or disorders. Indeed, her first attorney affirmed that during the early months of his representation, they were able to work together and "enjoyed typical, cordial communication." (Docket # 126-1 at ¶ 8). According to him, the defendant's communications "became drastically different" in mid-January 2020 (*id.* at ¶ 9), a timeframe that appears to coincide with the period during which her thyroid medication dosage was increased. Dr. Singh explained that one of the potential side effects of thyroid medication is development of symptoms of mental illness, such as the symptoms displayed by the defendant that were observed by Dr. Singh. (Docket # 200 at 5). Dr. Singh further stated his belief that adjustment in the dosage of her medication "will most likely help her recover from the symptoms of her current mental illness." (*Id.*). Following the report, the defendant ceased taking thyroid medication, she reported to Dr. Morse that she felt better, and Dr. Morse found her to be cooperative, engaged, within normal range on assessments, and competent to proceed. (Docket # 213). In addition, Mr. Getz, who has communicated extensively with his client over the past several weeks, agrees that she appears to him to be competent. (*See* Docket ## 214, 215). While not an expert opinion, Mr. Getz's assessment of his client's abilities to comprehend and communicate is relevant and supports Dr. Morse's opinion that the defendant is currently competent to proceed.

        Upon careful review of the two reports, and consideration of the parties' positions, this Court finds by a preponderance of the evidence that the defendant is not presently suffering from a mental disease or defect that would render her mentally incompetent to the extent that she would be unable to understand the nature and consequences of the proceedings against her or

4

render her unable to assist properly in her defense.  *See* 18 U.S.C. § 4241(d).  Accordingly, it is the recommendation of this Court that the defendant be determined competent to stand trial.

*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated:  Rochester, New York
       November 6, 2020

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 59(b) of the Local Rules of Criminal Procedure for the Western District of New York.[1]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See*, *e.g.*, *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd*., 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 59(b) of the Local Rules of Criminal Procedure for the Western District of New York, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 59(b) may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the parties.

**IT IS SO ORDERED.**

          *s/Marian W. Payson*
          MARIAN W. PAYSON
          United States Magistrate Judge

Dated: Rochester, New York
       November 6, 2020

---

[1] Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(D) commences with the filing of this Report and Recommendation. Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the fourteen days allowed for filing objections has elapsed. *United States v. Andress*, 943 F.2d 622 (6th Cir. 1991); *United States v. Long*, 900 F.2d 1270 (8th Cir. 1990).